The undersigned Special Assistant United States Attorney has reviewed the entire Complaint package and approves.

Christopher B. Browne

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
March 25, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Kayla Lokey
DEPUTY CLERK

**UNITED STATES OF AMERICA**

**v.**

**CANDY LAZO**
**a/k/a**
**Candida Jimenez Lazo**
**a/k/a**
**Natalia Perez de Cruz**
**a/k/a**
**Natalia Perez**

***Defendant.***

Case No. 5:26mj34

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT**

I, Madison Coleman-Dodson, duly sworn, do hereby depose and state:

## INTRODUCTION AND AFFIANT BACKGROUNDS

1. I am a Special Agent with the Department of State – Bureau of Diplomatic Security ("BDS"), currently assigned to the Washington Field Office and have been so employed since September 2023. I am empowered under Title 22, U.S. Code, Section 2709(a) to obtain and serve federal arrest and search warrants. As part of my duties as a BDS Special Agent, I investigate crimes related to passport and visa fraud, identity theft, and transnational human trafficking.

2. I submit this Affidavit in support of a criminal complaint charging Candy Lazo a/k/a Candida Jimenez Lazo a/k/a Natalia Perez de Cruz a/k/a Natalia Perez with violations of Title 18, U.S. Code, Sections 1542 (false statement in application for, and use of, passport), 1015(c) (use of documentary evidence of naturalization or of citizenship procured by fraud or false evidence), 641 (theft of government funds), and 1028A(a)(1) (aggravated identity theft); and Title

42, U.S. Code, Section 408(a)(7)(A) (use of social security number assigned on the basis of false information).

3. The facts in this Affidavit come from my personal observations, my review of documents, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely probable cause for the above-listed charges and does not set forth all of my knowledge about this matter.

4. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another federal agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Further, my interpretations and explanations of the significance of certain events, records, and statements discussed herein may evolve or change as the investigation progresses and/or new information is discovered. Finally, when foreign languages are described or used in this Affidavit, I described my understanding of the foreign language in parentheses based on my training, experience, and conversations with other law enforcement officers and personnel proficient in that language.

## PROBABLE CAUSE

### Introduction

5. In 2018, U.S. Citizenship and Immigration Services (USCIS) personnel discovered that immigration benefits had been issued to two different individuals who purported to have the same name and date of birth. In addition, USCIS investigators reviewed documents reflecting the fact that both females claimed the same spouse (Efren Francisco CRUZ RUIZ) and the same

biological child (Efren Natalio CRUZ PEREZ) in separate applications for immigration benefits, as detailed below.

6. In addition, USCIS records reflected that the two women's fingerprints were different from one another and that they lived in different regions of the United States.

**The Impersonator (LAZO)**

7. The first of the female individuals, Candy Lazo a/k/a Candida Jimenez Lazo a/k/a Natalia Perez de Cruz a/k/a Natalia Perez (hereinafter, "LAZO"), was born in Mexico and became a naturalized U.S. citizen on or about September 6, 2011. LAZO filed the application to become a U.S. citizen, not in her true name, which is Candida Jimenez Lazo, but in the name of "Natalia Perez de Cruz." According to her Mexican birth certificate, LAZO's true date of birth is June 5, 1973. However, on various applications for immigration benefits, U.S. passports, Virginia driver's licenses, Social Security Number card applications and Social Security Administration benefits, she has claimed to be "Natalia Perez de Cruz," DOB: July 27, 1965.

8. LAZO currently resides in Winchester, Virginia, according to records maintained by the Virginia Department of Motor Vehicles and the Social Security Administration.

**The Victim (PEREZ)**

9. The second female individual, whose true name is Natalia Perez, formerly Natalia Perez de Cruz (hereinafter, "PEREZ"), became a legal permanent resident of the United States in 1997. According to her Mexican birth certificate, PEREZ's true date of birth is July 27, 1965. PEREZ resides in Florida according to records maintained by USCIS.

10. Below are side-by-side photographs depicting LAZO (four photographs on the left) and PEREZ (six photographs on the right):

**LAZO:**



**PEREZ:**



**<u>Recorded Interview of PEREZ</u>**

11. In or around September 2021, USCIS staff interviewed PEREZ in the presence of her immigration attorney and with the assistance of an interpreter provided by her attorney. PEREZ's statements were given under oath and audio recorded.

12. PEREZ stated that she met Efren Francisco CRUZ RUIZ when she was 16 years old when they both resided in Oaxaca, Mexico. According to PEREZ, they married in 1986 and had a child, Efren Natalio CRUZ PEREZ, the following year.

13. PEREZ related that, early on in their marriage, CRUZ RUIZ illegally traveled to and from the United States for work. According to PEREZ, CRUZ RUIZ was able to obtain legal permanent residency and, eventually (in or around 1993), took their child, Efren Natalio CRUZ PEREZ, to the United States in order to obtain derivative citizenship for the child. PEREZ said that CRUZ RUIZ promised to return to Mexico for the purposes of obtaining citizenship for PEREZ and their second child, a daughter named Aracely CRUZ PEREZ.

14. However, CRUZ RUIZ stopped responding to PEREZ's letters[1] while he was residing in the United States. According to PEREZ, she did not see her son after CRUZ RUIZ took him to the United States.[2]

15. Approximately three years later, in or around 1996, CRUZ RUIZ returned to Mexico without PEREZ's son.[3] PEREZ explained that she asked CRUZ RUIZ repeatedly about their son but he would not provide information about him. PEREZ also stated that CRUZ RUIZ refused to explain whether PEREZ had "papers" in the United States or how she would be able to enter. According to PEREZ, CRUZ RUIZ discouraged her from asking questions and stated that he intended to bring PEREZ and their daughter, Aracely CRUZ PEREZ, to the United States immediately.

16. PEREZ stated that she felt something was wrong and, based on CRUZ RUIZ's refusal to provide more information, she was uncomfortable with the prospect of crossing the border with CRUZ RUIZ and their daughter.

17. PEREZ told USCIS officers that after a confrontation with PEREZ's father about CRUZ RUIZ's unwillingness to tell PEREZ about her son's whereabouts, CRUZ RUIZ demanded that PEREZ leave their home. PEREZ said she left the home with her daughter, Aracely, to live with an aunt and uncle elsewhere in Mexico. PEREZ said she never saw her husband, CRUZ RUIZ, again. She did, however, acknowledge receiving letters from CRUZ RUIZ, which he mailed

---

[1] PEREZ cannot read or write; she explained that she asked friends and family to help her draft and read these letters.

[2] PEREZ reunited with her son subsequent to the USCIS interview after she hired an attorney to help locate him.

[3] Approximately ten years prior, in or around 1986 or 1987, PEREZ entered the United States unlawfully and remained for a period of approximately nine months. She returned to Mexico after it was discovered that she was working and residing unlawfully in California.

to PEREZ's uncle's residence. In those letters, CRUZ RUIZ wrote that he wanted to take Aracely CRUZ PEREZ to the United States. PEREZ refused.

18. PEREZ explained that she decided to re-enter the United States when CRUZ RUIZ's brother (Salvador) returned to Mexico and asked PEREZ if she knew anything about her son's (Efren's) whereabouts. She told him she did not. Salvador suggested PEREZ come to the United States to find her son. Salvador also suggested to PEREZ that she may have lawful status or otherwise be entitled to immigration "papers" based on her marriage to CRUZ RUIZ. PEREZ said that at that point, in or around 1996, she decided to cross into the United States without authorization. She left her then-minor daughter with family in Mexico. PEREZ eventually settled in Haines City, Florida, and began working as a seasonal agricultural worker.

19. On or about December 20, 1996, PEREZ asked a co-worker for assistance in obtaining a green card as proof of her lawful permanent residence in the United States. During her 2021 interview, PEREZ explained that she did this based on what CRUZ RUIZ's brother (Salvador) told her about her potentially legal status in the United States. PEREZ stated she had no proof or confirmation beyond what Salvador told her.

20. PEREZ's co-worker filed on her behalf a USCIS form I-90, which is an application for a new or replacement green card, despite the fact that PEREZ had no status in the United States and never herself obtained a green card. PEREZ said she was interviewed by U.S. immigration authorities who asked cursory biographical questions; PEREZ ultimately received a green card in March 1997.

21. Investigators asked PEREZ whether, at the time she first sought a green card, she knew that another person (LAZO) had stolen PEREZ's identity in order to obtain immigration benefits. PEREZ said she did not, clarifying that she did not become aware until her application to

renew her green card was denied in 2018. At that time, she consulted an attorney, who subsequently discovered the identity-theft scheme.[4]

22. PEREZ was asked if she and CRUZ RUIZ had formally divorced. PEREZ said that, to her knowledge, they never officially divorced.

23. When asked whether PEREZ knew LAZO, PEREZ explained that they met when LAZO was approximately fourteen years of age. PEREZ further explained that PEREZ rented a room to LAZO at the request of LAZO's parents, when LAZO attended school in the town in which PEREZ lived. PEREZ confirmed that a photograph of LAZO shown to her by investigators depicted LAZO. PEREZ explained that she last saw LAZO shortly after the birth of PEREZ's daughter, Aracely, in November 1988. LAZO left the house suddenly when she was approximately fifteen years old—around the same time PEREZ's husband (CRUZ RUIZ) returned to the United States.[5]

**USCIS Investigation of LAZO**

24. In her application for an immigrant visa, which was approved in or around April 1993, LAZO claimed that her name was "Natalia Perez" and that her mother was "Elidia Perez

---

[4] As noted, PEREZ's first I-90 application was approved in March 1997. The permanent resident card requires replacement every ten years. The victim filed a form I-90 on February 20, 2007, and subsequently on March 15, 2007, due to PEREZ's failure to include payment in the February application. On July 20, 2007, PEREZ's second form I-90 was approved. PEREZ submitted another form I-90 on May 10, 2017, to renew her permanent residence card a second time. However, USCIS denied the request on March 20, 2018, because the agency found information that a woman (LAZO) using the same name and date of birth had already become a naturalized citizen. PEREZ appealed the decision and final adjudication of PEREZ's form I-90 is still pending.

[5] In a 2018 application for Social Security Administration disability benefits, LAZO claimed she did not know exactly when she married CRUZ RUIZ, but estimated it was in or around January 1986.

Santiago." LAZO claimed that she was born on July 27, 1965.[6] LAZO further claimed on the visa application that PEREZ's son, Efren Natalio CRUZ PEREZ, was her (LAZO's) child.

25. USCIS compared LAZO's application to LAZO's true Mexican birth certificate, which revealed that LAZO was actually born on June 5, 1973, in Cañada de Morelos, Chalcatongo De Hidalgo, Tlaxiaco, Oaxaca, Mexico.

26. LAZO's true birth certificate lists her parents as Feliciano Macario Jimenez Osorio (father) and Ernestina Lazo (mother).

27. However, the birth certificate attached to LAZO's form I-130 (Petition for Alien Relative) lists her parent as "Elidia Perez Santiago" (mother). No father was listed on the birth certificate attached to LAZO's form I-130.

28. USCIS undertook an overseas document verification investigation to confirm that the Mexican birth certificate submitted with LAZO's form I-130 was, in fact, PEREZ's birth certificate.

29. Specifically, USCIS officers obtained and reviewed the authentic Mexican birth certificate issued for PEREZ and confirmed that the date of birth, date of registration, and mother's name all matched the certificate fraudulently submitted in support of LAZO's I-130. Officers also found an addendum to PEREZ's birth certificate, which added the name of PEREZ's father, Felicitos Martinez Sanchez.

30. Additionally, during her 2021 interview with USCIS officials, PEREZ confirmed both her mother and father's given names: Elidia and Felicitos, respectively.

---

[6] Following review of records from USCIS, U.S. Department of State, U.S. Social Security Administration, and Virginia Department of Motor Vehicles, investigators determined that LAZO used PEREZ's name and/or date of birth on applications for: (a) naturalization via USCIS form N-400; (b) U.S. passports; (c) Virginia driver's licenses; (d) Social Security Administration identification documents and disability benefits; (e) renewed U.S. passport and passport card; and (f) Real ID Act-compliant Virginia driver's license.

**LAZO's Facebook Account**

31. In order to determine the identities of LAZO's true parents, USCIS reviewed images from LAZO's publicly viewable Facebook profile.

32. LAZO's Facebook profile page bore a variation of her true name, "Candy" LAZO, and her photograph, as depicted below:




33. In various photographs, posts, and comments uploaded to LAZO's account, LAZO indicated that Feliciano Macario Jimenez Osorio is her father, and Ernestina Lazo is her mother, as pictured below:






34. On the picture above, LAZO commented: "MIS QERIDOS PAPAS" ("my beloved parents").

35. Law enforcement compared the pictures posted on LAZO's Facebook profile with photographs submitted by LAZO's parents with their applications for U.S. travel visas and confirmed they appeared to depict the same individuals. The visa application photographs appear as follows:





36. Travel database checks further confirmed that when Ernestina Lazo was admitted to the United States under her travel visa, Ernestina Lazo listed her daughter's (LAZO's) former residence in White Post, Virginia, as her destination.

37. Additionally, according to records maintained by Facebook, LAZO reported her date of birth as June 30, 1973 (not July 27, 1965, as she has consistently reported to immigration and other government agencies).

38. Facebook records also reflect LAZO frequently participates in marketing activities on behalf of dietary supplement companies and, occasionally, advertising for other businesses. In 2023, LAZO self-reported via Facebook her employment in "redes de mercadeo," which translates to "multilevel marketing" or "network marketing."[7]

**U.S. Social Security Administration's Investigation of LAZO**

39. As noted, law enforcement officers' review of documents maintained by the U.S. Social Security Administration revealed that, on or about March 5, 2018, LAZO filed an application for Social Security Administration disability benefits.

40. The U.S. Social Security Administration (SSA) administers two programs that provide benefits based on disability: the Social Security disability insurance program (Title II of the Social Security Act) and the Supplemental Security Income (SSI) program (Title XVI of the Social Security Act). Title II provides for payment of disability benefits to disabled individuals who are "insured" under the Act by virtue of their contributions to the Social Security trust fund through the Social Security tax on their earnings, as well as to certain disabled dependents of insured individuals. Title XVI provides SSI payments to disabled individuals (including children under age 18) who have limited income and resources.

[7] According to the Federal Trade Commission (FTC), businesses that involve selling products to family and friends and recruiting other people to do the same are called multi-level marketing, network marketing, or direct marketing businesses. *See* FTC Consumer Advice Bulletin, *Multi-Level Marketing Businesses and Pyramid Schemes*, available at https://consumer.ftc.gov/articles/multi-level-marketing-businesses-and-pyramid-schemes (last accessed March 9, 2026).

41. The Social Security Act and SSA's implementing regulations prescribe rules for deciding if an individual is "disabled." Notably, for all individuals applying for disability benefits under Title II, and for adults applying under Title XVI, the definition of disability is the same: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment(s) which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42. As noted, LAZO stated on her application for SSA benefits that her date of birth was July 27, 1965, effectively raising her age by approximately eight (8) years. LAZO further stated she was disabled since November 15, 2016. Elsewhere in the application LAZO indicated she read and wrote in the English language but preferred Spanish.

43. LAZO's application for SSA benefits listed the social security number she obtained by impersonating PEREZ.

44. LAZO's SSA application further stated that she previously went by the name Natalia PEREZ. LAZO claimed she changed her name from Natalia PEREZ to Candy LAZO (a variation of her true name) after her divorce in or around 2012 because she "wanted to start a new life for [her]self."

45. Finally, LAZO stated that, as of the date of her application in March 2018, she was disabled, unable to work, and intended to apply for Title XVI Supplemental Security Income in addition to Title II benefits.

46. On or about September 10, 2018, LAZO posted the following photograph on her Facebook profile that appears to depict LAZO harvesting edible flowers:




47. Since 2018, LAZO has received over $87,000 in Social Security disability benefits. On her July 2022 application for a renewed U.S. passport, LAZO indicated her occupation was "desability." As noted, in 2023, she published on Facebook that she worked in multilevel marketing, which is consistent with her online activity advertising nutritional supplements.

48. Records from Wells Fargo obtained by law enforcement in response to legal process for a joint checking account in the names of LAZO and her spouse revealed deposits from "4Life Bonus" made to LAZO in or about September 2021, April 2022, and August 2022. Open-source information regarding "4Life" revealed a company that markets immune supplements. From in or about September 2023 through in or about August 2024, LAZO also received deposits from "Activz." Open-source information regarding "Activz" revealed a company that markets nutritional supplements and skincare products.

**<u>LAZO's Fraudulent Applications for Documents</u>**

49. LAZO submitted a U.S. passport application on or about June 5, 2012. On the application, she claimed that her date of birth was July 27, 1965, and further claimed that her former name was Natalia Perez de Cruz. She signed the application "Natalia Perez" and, on page

2, indicated that her name had changed “by marriage or court order” to “Candy Lazo.” As a result of her application, LAZO was issued a U.S. passport bearing a number ending in 9626.

50. LAZO’s next passport application (for both a passport book and card) was dated July 5, 2022. She repeated the same falsehoods about her date of birth and prior name on that application and listed her permanent address as “111 Whites Place, Winchester, Virginia.” As a result of her application, LAZO was issued a U.S. passport bearing a number ending in 1894 and a passport card ending in 4449.

51. On April 21, 2016, at the Front Royal, Virginia Department of Motor Vehicles (DMV) office, LAZO applied for a driver’s license. She listed PEREZ’s date of birth and PEREZ’S name as her former name. According to a certified copy of LAZO’s application, she presented a U.S. passport (the one she applied for in 2012, bearing a passport number ending in 9626) as “Proof of Legal Presence.”

52. On December 13, 2021, at the Winchester, Virgina DMV office, LAZO applied for a new driver’s license. She listed PEREZ’s date of birth as her own, and PEREZ’S name as her former name. According to a certified copy of LAZO’s application, she also listed the social security number she obtained by impersonating PEREZ.

53. On July 29, 2023, at the Winchester, Virgina DMV office, LAZO applied for a new, “REAL ID” compliant driver’s license. She listed PEREZ’s date of birth as her own, and PEREZ’S name as her former name. According to a certified copy of documents submitted with LAZO’s application, she presented a U.S. passport (the one she applied for in 2022, bearing a passport number ending in 1894). She also listed the social security number she obtained by impersonating PEREZ.

54. Finally, on February 23, 2024, at the Front Royal, Virginia DMV office, LAZO applied for a replacement driver's license. She listed PEREZ's date of birth as her own, and PEREZ'S name as her former name. As before, she also listed the social security number she obtained by impersonating PEREZ.

**<u>Search Warrant at LAZO's Residence</u>**

55. On March 25, 2026, federal agents executed a search warrant (WDVA Matter No. 5:26-MJ-00033) at LAZO's Winchester, Virginia residence.

56. There, agents found, among other evidence of LAZO's identity-theft scheme, the following:

a. A marriage certificate documenting the marriage of PEREZ to CRUZ RUIZ;

b. A Mexican passport, issued in 1996, in the name of PEREZ;

c. A Mexican consular identification card, issued in 2008, in the name of PEREZ, which bears a photograph of LAZO;

d. A Mexican passport, issued in 2008, in the name of PEREZ, which bears a photograph of LAZO;

e. A Mexican passport, issued in 2009, in the name of PEREZ, which bears a photograph of LAZO;

f. A Social Security card in the name of PEREZ; and

g. A family photograph of LAZO and her true parents, Feliciano Macario Jimenez Osorio and Ernestina Lazo.

## CONCLUSION

Based on the foregoing, I submit that probable cause exists to charge Candy Lazo a/k/a Candida Jimenez Lazo a/k/a Natalia Perez de Cruz a/k/a Natalia Perez with violations of Title 18, U.S. Code, Sections 1542 (false statement in application for, and use of, passport), 1015(c) (use of documentary evidence of naturalization or of citizenship procured by fraud or false evidence), 641 (theft of government funds), and 1028A(a)(1) (aggravated identity theft); and Title 42, U.S. Code, Section 408(a)(7)(A) (use of social security number assigned on the basis of false information).

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*Madison Coleman-Dodson*
Madison Coleman-Dodson
Special Agent
Bureau of Diplomatic Security
Department of State

Attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 via telephone.

DATE: March 25, 2026

Joel C. Hoppe
JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE